IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DAVE ANDERSON, BRYAN FLAKE, SPENCER HOGUE, JIM JACKETTA, MATT OGLESBY, BRITT MILLER, JESSICA PRATHER, MARK SCHAEFER, & JIM STONE as TRUSTEES OF THE UTAH-IDAHO TEAMSTERS SECURITY FUND,<br><br>Plaintiffs,<br><br>v.<br><br>UNIVERSITY OF UTAH,<br><br>Defendant,<br><br>v.<br><br>KYLE MIXON,<br><br>Intervenor. | MEMORANDUM DECISION AND ORDER DISMISSING PLAINTIFFS' COMPLAINT WITHOUT PREJUDICE<br><br>Case No. 2:17-CV-950 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on the Court's request for supplemental briefing concerning whether this matter is ripe for declaratory judgement. The parties have filed their respective briefing in compliance with the Court's Order issued on December 14, 2017. For the reasons discussed below, the Court will dismiss Plaintiffs' Complaint without prejudice.

I. BACKGROUND

Plaintiffs are the named Trustee-Fiduciaries of the Utah-Idaho Teamsters Security Fund, which administer the employee benefit plan ("the Plan") at issue in this action. The Plan is a self-funded "employee welfare benefit plan" as defined in 29 U.S.C. § 1002(1) and covered under the Employee Income Security Act of 1974 ("ERISA") pursuant to 29 U.S.C. § 1003(a).

1

On September 28, 2014, Intervenor Kyle Mixon[1] ("Mixon"), a "covered person" under the Plan, was seriously injured in a car accident involving Patricia Headley ("Headley"). Mixon was treated by Defendant University of Utah Hospital ("Defendant"). Plaintiffs paid all of the covered claims submitted by Defendant pursuant to the Plan, totaling more than $300,000.

Following the accident, Mixon brought several claims against Headley. Headley's insurance company, Farmers Insurance Company ("Farmers"), has allegedly agreed to pay $100,000 in insurance policy limits to settle Mixon's claims against Headley. Plaintiffs and Defendant both claim first rights to the $100,000. Defendant filed an amended hospital lien for $23,835.32 in the Third District Court, Salt Lake County, Utah, in relation to the services it provided to Mixon, which, Defendant argues, gives it first rights to the settlement funds. Plaintiffs claim the subrogation provisions included in the Plan entitle them to "an unqualified express first dollar (priority) subrogation right and claim to the $100,000."[2] Plaintiffs claim that Farmers is aware of the dispute and will not disperse the settlement funds until a determination as to who has first rights is reached.

As a result of Farmers' refusal to distribute the funds, Plaintiffs filed an action for declaratory judgment in this Court. In its Amended Complaint, Plaintiffs seek a declaratory judgment as follows:

> As to Defendant, that Utah's Hospital Lien Law and Defendant's Hospital Lien asserted thereunder, are pre-empted by ERISA and Defendant has no rights thereunder in the $100,000.00.

---

[1] The Court granted Kyle Mixon's Motion to Intervene on December 14, 2017. Docket No. 32.

[2] Docket No. 35, at 7.

As to Mixon 1) that he has no rights in the $100,000.00 . . . and 2) Under the Plan Document, Plaintiffs have the independent rights to "sue, compromise, or settle" with third parties in their own names or in the name of . . . Mixon "to the full extent of the fringe benefit payments made to or on behalf of . . . Mixon."[3]

In his Motion to Intervene, Mixon alleged that his agreement with Farmers to settle the claims in exchange for $100,000 is merely an oral agreement and that "Mixon has not signed a formal settlement agreement or release, nor has he received the settlement amount from Farmers."[4] Mixon further contends that "[i]t is within [his] discretion to reject Farmers' settlement offer and/or decide not to pursue his claims against Headley and Farmers."[5]

As a result of Mixon's statements regarding the settlement, the Court issued an Order on December 14, 2017, requesting supplemental briefing on whether the matter was ripe for declaratory judgment. The Court noted that, "[i]f Mixon's representations are true, then there may never be a settlement to which the subrogation provisions of Plaintiffs' benefit plan or Defendant's lien might apply, and the Court would be left issuing an advisory opinion rather than declaratory relief."[6] Defendant and Plaintiffs submitted the requested briefing to the Court on January 10, 2018, and January 11, 2018, respectively. Mixon filed a brief joining Defendant's brief on February 2, 2018.

---

[3] Docket No. 39, at 3–4 (citations omitted).

[4] Docket No. 17, at 2.

[5] *Id.* at 6.

[6] Docket No. 33, at 2.

II. DISCUSSION

Plaintiffs request declaratory judgment on the following two issues: first, the parties' respective rights to the alleged settlement funds; and second, whether the language of the Plan grants Plaintiffs the right to file suit or seek settlement, in its own name or in the name of Mixon.

The Declaratory Judgment Act grants district courts discretionary jurisdiction[7] to issue a declaratory judgment only "[i]n a case of actual controversy within its jurisdiction."[8] In considering a request for declaratory judgment, the Court must, therefore, first determine whether "a case of actual controversy" is presented and then may decide whether to exercise its discretion and hear the matter.

The Supreme Court has held that a matter amounts to a case of actual controversy where "there is a substantial controversy, between parties having adverse legal interests, *of sufficient immediacy and reality* to warrant the issuance of a declaratory judgment."[9] Part of this analysis requires finding that the conflict is "ripe for determination."[10] In other words, "[t]he disagreement must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them."[11] "Whether or not a

---

[7] *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) ("[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites.").

[8] 28 U.S.C. § 2201(a).

[9] *Columbian Fin. Corp. v. BancInsure, Inc.*, 650 F.3d 1372, 1376 (10th Cir. 2011). (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)).

[10] *Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc.*, 344 U.S. 237, 244 (1952).

[11] *Id.*

question is ripe for decision requires an examination of 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'"[12]

A. RIGHTS TO THE SETTLEMENT FUNDS

   *1. Fitness for Judicial Review*

"The extent to which a controversy is 'fit for judicial review' depends, in part, upon whether or not the development of a more precise factual or legal record will materially benefit the decision making process. Often, contingent controversies are rendered hypothetical and moot by subsequent factual or legal developments."[13]

Plaintiffs seek a determination of rights regarding the settlement funds to be issued by Farmers. In their respective briefing, the parties center their ripeness arguments on whether Mixon's oral settlement agreement with Farmers is definite. As stated, Mixon alleges that the settlement is not definite, and that he may yet terminate the alleged agreement and/or withdraw his claims against Headley and Farmers. Defendant agrees with Mixon and argues that, as a result, the matter is not ripe for review. Conversely, Plaintiffs argue that, because Mixon's oral agreement with Farmers is not subject to the statute of frauds, it is binding, despite it not being written and/or signed by Mixon. Thus, Plaintiffs contend that the matter is ripe because the settlement is definite and the settlement funds must be dispersed.

---

[12] *ACORN v. City of Tulsa, Okla.*, 835 F.2d 735, 739 (10th Cir. 1987) (quoting *Abbott Labs. v. Gardner,* 387 U.S. 136, 149 (1967)).

[13] *Pub. Serv. Co. of N.M. v. City of Albuquerque*, 755 F. Supp. 1494, 1497 (D.N.M. 1991).

Plaintiffs may be correct that Mixon would be bound by his oral agreement with Farmers. Utah courts consistently enforce oral settlement agreements.[14] However, whether Mixon is bound by the settlement agreement is not properly before the Court. Plaintiffs have not sought a declaration that there is a binding settlement agreement between Mixon and Farmers. Further, without Farmers being joined as party, the Court does not have all necessary parties to litigate the issue.[15] As such, the Court cannot make a finding that Mixon is or is not bound by the alleged settlement agreement.

The only party to both this matter and the settlement agreement—Mixon—has alleged that the settlement is not definite and the claims against Headley and Farmers may be withdrawn. This Court must therefore make its ripeness determination with the understanding that the $100,000 settlement funds may or may not issue. Without a definite settlement agreement, the controversy is contingent and a determination of who receives first rights to the resulting settlement funds would be hypothetical. If the Court issued a declaration that created an undesired result for Mixon, Mixon may choose to withdraw his settlement agreement. Farmers would then be forced to decide whether to seek enforcement of the settlement agreement or

---

[14] *See Murray v. State,* 737 P.2d 1000, 1001 (Utah 1987) ("The fact that plaintiffs had not yet signed a written agreement is of no legal consequence. It is a basic and long-established principle of contract law that agreements are enforceable even though there is neither a written memorialization of that agreement nor the signatures of the parties, unless specifically required by the statute of frauds."); *McKelvey v. Hamilton*, 2009 UT App 126, ¶ 31, 211 P.3d 390 (enforcing settlement agreement where parties had not created and signed an official agreement); *Zions First Nat'l Bank v. Barbara Jensen Interiors, Inc.*, 781 P.2d 478, 480 (Utah Ct. App. 1989) (enforcing oral settlement agreement).

[15] *See* Fed. R. Civ. P. 19(a) ("A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if . . . in that person's absence, the court cannot accord complete relief among existing parties . . . .").

simply not disperse the funds, potentially triggering further litigation proceedings between Mixon and Headley and/or Plaintiffs and Headley. Under either scenario, an order from this Court would be an advisory opinion on the likelihood of Plaintiffs' success in pursuing their potential claims. This issue, therefore, needs further factual and legal development before it is fit for review.

   a. *Hardship to the Parties*

The Court must next evaluate the hardship each party would suffer if the Court does not issue a declaratory judgment. "In assessing the hardship to the parties of withholding judicial resolution, [the] inquiry typically turns upon whether the challenged action creates a direct and immediate dilemma for the parties."[16]

Courts have found a "direct and immediate dilemma" if one party is forced to decide between compliance and noncompliance with a law or regulation, while risking potential punishment for noncompliance.[17] This is not the case here as no regulations governing the parties' conduct are at issue. Further, there are no upcoming deadlines or time constraints that would otherwise place the parties in a direct and immediate dilemma. The parties have other

---

[16] *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995) (internal quotation marks and citations omitted).

[17] *See e.g.*, *Farrell-Cooper Mining Co. v. U.S. Dep't of the Interior*, 728 F.3d 1229, 1237 (10th Cir. 2013) ("Therefore, a delay in our review will not lead to hardship for Farrell–Cooper because the company is not faced with the choice of complying with OSMRE's challenged reclamation requirements or facing sanctions."); *Roe No. 2 v. Ogden*, 253 F.3d 1225, 1231 (10th Cir. 2001) (finding declaratory judgment was necessary because delayed review would cause plaintiffs hardship where the student-plaintiffs would be forced to comply with the requirements of the bar application they believed violated their rights or "risk denial of admission to the bar after expending considerable time and expense").

7

avenues by which they may obtain a resolution. The hardship to the parties will, therefore, be minimal.

Because the matter of rights to the settlement funds is not yet fit for review and because a lack of determination on the matter would not place a significant hardship on the parties, this issue is not ripe. Accordingly, the Court lacks subject-matter jurisdiction on the issues regarding the settlement funds and will dismiss the issue without prejudice.

B.  PLAINTIFFS' ABILITY TO SETTLE ON BEHALF OF MIXON

It is less clear whether the issue of Plaintiffs' ability to bring suit or settle on behalf of Mixon is ripe. While there is a live dispute between Mixon and Plaintiffs on this issue, the "immediai[te]and real[]" effect of a declaratory judgment is not certain. However, regardless of whether this issue is ripe, the Court will decline to exercise its jurisdiction over the matter for the reasons stated below.

If a court determines an actual case of controversy is before it, the court must then determine whether to exercise its discretion to hear the declaratory judgment action. A "district court is not obliged to entertain every justiciable declaratory claim brought before it. The Supreme Court has long made clear that the Declaratory Judgment Act 'gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so.'" [18] However, that discretion is not unlimited. The Tenth Circuit directs district courts to consider five factors when deciding whether to exercise its discretion on a declaratory judgment matter. The factors are as follows:

---

[18] *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 982 (10th Cir. 1994) (citing *Pub. Affairs Assocs., Inc. v. Rickover,* 369 U.S. 111, 112, (1962)).

8

(1) whether a declaratory action would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to *res judicata* "; (4) whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.[19]

Upon consideration of each of these factors, the Court declines to exercise discretion. First, a declaratory action regarding Plaintiffs' rights to bring suit on behalf of Mixon would not settle the controversy between the parties. A declaration on this, seemingly minor, issue would not even settle the main controversy prompting the filing of this action—to determine who has first rights to the alleged settlement funds between Plaintiffs and Defendant. Notably, Plaintiffs did not seek a declaration that it could sue on behalf of Mixon in its original Complaint. Plaintiffs added the issue to the Amended Complaint only after the Court granted Mixon's Motion to Intervene. Had Mixon not made the effort to intervene, Plaintiffs seemingly would not have sought a declaration regarding its rights to settle or bring suit on behalf of Mixon. It, therefore, appears that this issue was relatively unimportant to Plaintiffs in their decision to file for declaratory judgment.

Second, a declaration would not serve a useful purpose in clarifying the legal relations between the parties. Though a declaration on this issue would add clarity to the relationship between Plaintiffs and Mixon, further litigation would be required to achieve full clarity between the two parties. More significantly, a declaration on this issue would not settle, or even affect, the relationship between the two primary parties—Plaintiffs and Defendant. Therefore, the second factor weighs against exercising discretion.

---

[19] *Id.* (quoting *Allstate Ins. Co. v. Green,* 825 F.2d 1061, 1063 (6th Cir. 1987)).

Regarding the third and fourth factors, there is nothing before this Court suggesting that Plaintiffs are engaged in "procedural fencing" nor is there any evidence suggesting a declaration from this Court would interfere with or affect any other proceeding.

Finally, resolution of this issue would be best resolved in the same proceeding or forum regarding the distribution of the alleged settlement funds. Because the issue of first rights to the settlement funds is not ripe, it is likely a separate litigation will take place to resolve the controversy between Plaintiffs and Defendant. A determination on this issue is better left to a court deciding the underlying claims. Due to the relative insignificance of the remaining issue, the *Moohn* factors weigh in favor of dismissal and the Court will decline to exercise its discretion accordingly.

## III. CONCLUSION

It is therefore

ORDERED that Plaintiffs' Complaint is dismissed without prejudice.

DATED this 26th day of February, 2018.

BY THE COURT:

_____
Ted Stewart
United States District Judge